# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY TYRONE FOSTER, | CV F  99-5748 OWW DLB HC |
| Petitioner, | ORDER DENYING PETITIONER'S SECOND MOTION TO AMEND |
| v. | [Docs. 147, 148, 149] |
| ROSIE B. GARCIA, Warden, | |
| Respondent. / | |

    Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

    The instant petition for writ of habeas corpus, which was filed on May 28, 1999, is currently pending review on the merits by this Court.[1]  Petitioner filed one previous request to exhaust a claim based on the United States Supreme Court's decisions in <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S.Ct. 2531, 159 L.#d.2d 403 (2004) and <u>United States v. Booker</u>, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).  (Court Doc. 142.)  Respondent filed an opposition to Petitioner's motion on December 9, 2005.  (Court Doc. 143.)  The motion was denied on January 25, 2006.  (Court Doc. 145.)

    On July 5, 2006, Petitioner filed a second request for a stay based on a newly discovered claim.  (Court Doc. 147.)  On September 15, 2006, Petitioner filed an addendum to his request.

---

[1] Respondent filed an answer to the petition on November 12, 2003, and Petitioner filed a traverse on February 26, 2004, and a supplemental traverse on August 27, 2004.  (Court Docs. 127, 134, 137.)  In Findings and Recommendations issued concurrently herewith, the Court has recommended that the petition be denied.

1

1  (Court Doc. 148.) Respondent filed an opposition to Petitioner's request on September 22, 2006.
2  (Court Doc. 149.) Petitioner filed a reply to Respondent's opposition on October 16, 2006.
3  (Court Doc. 152.)

4                                               DISCUSSION

5       In his request and addendum, Petitioner contends that he has recently discovered facts
6  supporting a claim that the prosecutor in his trial violated Brady v. Maryland, 373 U.S. 83, 87, 83
7  S.Ct. 1194, 10 L.Ed.2d 215 (1963). (Court Doc. 147, at 1, 4-5.) Specifically, Petitioner states
8  that in late 2004, another state prisoner informed him that the victim in his criminal case, Darnell
9  Packard, and a prosecution witness, Kevin Coleman, each had a prior arrest for the offense of
10 possession of cocaine base for sale (Cal. Penal Code § 11351.5.) (Court Doc. 147, at 1-2; Court
11 Doc. 148, Exhs. C, D, & E, at 3.)

12      Beginning in January 2006, Petitioner filed various requests with the state court for Mr.
13 Packard's and Mr. Coleman's arrest records. (Court Doc. 147, at 1; Court Doc. 148, Exh A at 7,
14 Exh. B at 1; Exh. E at 3, Exh. E, Appendix A [Freedom of Information Act request dated January
15 14, 2006].)

16      Petitioner has submitted court documents relating to the arrest of Darnell Lamont Packard
17 and Kevin Wayne Coleman. (Court Doc. 147, at 2.) As Respondent submits, these names match
18 the names of the victim and a prosecution witness in Petitioner's trial. (See RT 58, 150.) A
19 complaint was filed in the Fresno County Superior Court on or about April 1, 1991, in case
20 number 43901-4 charging both men with a violation of California Penal Code section 11351.5,
21 possession of cocaine base for sale. (Court Doc. 148, Exh. C.) Both men were held to answer
22 the charges on May 7, 1991. (Id.) However, the documents submitted by Petitioner demonstrate
23 that the State moved to dismiss the charge against Mr. Packard on December 5, 1991, and he was
24 ordered discharged. (Court Doc. 147, Exh. A, Appendix E.) Subsequently, on August 9, 1993,
25 Mr. Coleman's case was dismissed. (Id, Appendix F.) The minutes further reflect that Mr.
26 Coleman had completed a California Penal Code section 1000 diversion program as ordered.[2]

27

28       [2] As Respondent correctly states, at the time, the diversion statute provided that a defendant did not plead guilty, but was ordered to participate in a drug education, treatment, or rehabilitation program for six months to two years. People v. Ormiston, 105 Cal.App.4th 676, 687 n.7 (2003). Upon satisfactory completion of the program, the

                                                         2


(Id., Appendix F.)

Petitioner contends that the prosecution suppressed evidence of these arrests in violation of Brady. (Court Doc. 147, at 4; Court Doc. 148, at 2.)

In Rhines v. Weber, 544 U.S. 269, 125 S.Ct. 1528 (2005), the Supreme Court held that a district court has discretion to stay a mixed petition to allow a petitioner to present his unexhausted claims to the state court in the first instance and then to return to federal court for review of his perfected petition.

Nevertheless, stay and abeyance is available only in limited circumstances, because the procedure frustrates AEDPA's[3] objective of encouraging finality by allowing a petitioner to delay the resolution of federal proceedings and undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. Id. at 277. The Supreme Court held that a stay and abeyance is "only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." Id.

In Rhines, the Supreme Court noted that, while the procedure should be "available only in limited circumstances," it "likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. Rhines, 544 U.S. at 278.

A.    Good Cause For Failure To Exhaust

As Respondent correctly argues, Petitioner did not present the instant Brady violation until July 5, 2006 (Court Doc. 147), twelve years after his conviction, years after extensive postconviction litigation in the state courts that included six state habeas petitions, and after numerous and various filings in this Court. As previously stated, Petitioner claims:

> Approximately late 2004. While the petitioner was housed at: "Salinas State Prison level IV, another Fresnoan state prisoner coveyed [sic] to petitioner that Packard was once arrested for sales of "Crack Cocaine" to a Fresno

---

charge would be dismissed and the arrest would be deemed not to have occurred. Id.

[3] AEDPA refers to the Antiterrorism and Effective Death Penalty Act of 1996.

3

|   |   |
|---|---|
| 1 | undercover Police Officer? |
| 2 | (Court Doc. 148, Exh. E at 3.) |

As Respondent submits, despite Petitioner having notice of his alleged Brady violation claim, Petitioner took no action at all for more than a year until he submitted a Freedom of Information Act request (Court Doc. 147, Exh. B, Appendix A.), and wrote to the Fresno County Superior Court (Court Doc. 147, Exh. B, Appendix D, E), on January 14, 2006.  Even at this juncture, Petitioner has not taken steps to exhaust his Brady claim in the state courts by filing a petition for writ of habeas corpus.  Although Petitioner claims that he must seek a stay from this Court in order to exhaust this claim, Petitioner was nonetheless able to exhaust the claim in state court when he became aware of its existence.  Additionally, Petitioner claims that he has filed a complaint pursuant to the Civil Rights Act (Court Doc. 147, Exh. A), and a complaint with the California State Bar (Court Doc. 147, Exh. B), these are not steps toward exhausting the instant Brady claim in state court.   Accordingly, Petitioner has failed to demonstrate good cause for his failure to seek prompt steps at exhausting this claim once he admittedly discovered the factual predicate in "late 2004."

B.     Unexhausted Claims Potentially Meritorious

As previously stated, Petitioner contends that the prosecutor suppressed impeachment evidence in violation of Brady v. Maryland, based on his "newly discovered evidence."

First, as Respondent points out, the Court could likely never reach the merits of Petitioner's claim as it is barred by the AEDPA one-year limitations period.  Assuming that Petitioner did not discover the factual predicate for his claim until "late 2004" (Court Doc. 148, Exh. E at 3), the one-year limitations period began to run at that time (28 U.S.C. § 2244(d)(1)(D)) and expired in late 2005 without Petitioner having taken any action to toll it.  See 28 U.S.C. § 2244(d)(2).  Nor does the claim relate back to any claim in the federal petition filed on May 28, 1999.  (Court Doc. 1.)

Second, Petitioner has not demonstrated that the claim is potentially meritorious.  In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the

1  evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of
2  the prosecution." See also Strickler v. Greene, 527 U.S. 263, 280-281 (1999).  The Supreme
3  Court has stated that the duty to disclose such evidence is applicable even though there has been
4  no request by the accused.  United States v. Agurs, 427 U.S. 97, 107 (1976).  The duty to disclose
5  encompasses impeachment evidence as well as exculpatory evidence.  United States v. Bagley,
6  473 U.S. 667, 676 (1985).  Such evidence is material "if there is a reasonable probability that,
7  had the evidence been disclosed to the defense, the result of the proceeding would have been
8  different."  Id., at 682; see also Kyles v. Whitley, 514 U.S. 419, 433-434 (1995).  Additionally,
9  "the rule encompasses evidence 'known only to police investigators and not to the prosecutor.'"
10 Strickler, 527 U.S. at 280, *quoting* Kyles, 514 U.S. at 438.  To constitute a Brady violation, the
11 Supreme Court has set forth a three-part test: 1) "The evidence at issue must be favorable to the
12 accused, either because it is exculpatory, or because it is impeaching"; 2) "[T]hat evidence must
13 have been suppressed by the State, either willfully or inadvertently"; and 3) "[P]rejudice must
14 have ensued."  Strickler, 527 U.S. at 218-282.

15      Petitioner has not, and likely cannot, demonstrate that the evidence that he recently
16 discovered was "material" in that there is a reasonable probability that, had it been provided to
17 the defense, the outcome of the trial would have been different.  Petitioner has submitted
18 evidence that both Mr. Coleman and Mr. Packard were charged with possession of cocaine base
19 for sale in 1991.  However, the evidence submitted by Petitioner does not demonstrate that Mr.
20 Packard engaged in any misconduct, as the charge against him was dismissed eight months after
21 the complaint was filed, on December, 5, 1991, on the prosecution's motion.  (Court Doc. 147,
22 Exh. B, Appendix E.)

23      Although the charges against Mr. Coleman were not dismissed, Petitioner's documents
24 demonstrate the he successfully completed a diversion program pursuant to Penal Code section
25 1000 et seq.  (Id., Appendix F.)  Pursuant to California law, at that time, the arrest was deemed
26 not to have occurred.  Ormiston, 105 Cal.App.4th at 687 n.7, 690 n.10.  Accordingly, as
27 Respondent submits, this evidence would not have had great impeachment value.  Moreover, Mr.
28 Coleman's trial testimony was brief and somewhat cumulative of Mr. Packard's testimony (See

1  RT 150-155.) Mr. Coleman testified that he had encountered Mr. Packard, a relative, shortly
2  after Packard had escaped from the carjacked vehicle. (RT 151.) Mr. Coleman testified that Mr.
3  Packard appeared to be in shock. (RT 153.) Mr. Packard told him that he had been carjacked
4  and he was able to take the gun away from the perpetrator. (RT 153.) Thus, even if Mr.
5  Coleman's entire testimony had been discounted, it was immaterial to the verdict and would have
6  made no difference.

7      To the extent Petitioner contends that the arrests resulted in bias in favor of the
8  prosecution, his claim is without merit. As Respondent points out, in his state bar complaint,
9  Petitioner suggests that Mr. Packard and Mr. Coleman were "placed into a drug diversion
10  program pursuant to a hidden plea bargain. . . ." (Court Doc. 147, Exh. B at 2.) However, both
11  Mr. Packard's and Mr. Coleman's cases were resolved with dismissal of the charges prior to
12  Petitioner committing his criminal offense on October 19, 1993.

13  C.    <u>Intentional Dilatory Litigation Tactics</u>

14      A stay is not appropriate if "a petitioner engages in abusive litigation tactics or intentional
15  delay. . . ." <u>Rhines</u>, 544 U.S. at 278.

16      Notwithstanding this is Petitioner's second motion to stay in less than a year, the amount
17  of delay that Petitioner has engaged in presenting the claim to this Court, coupled with the fact
18  that Petitioner, an experienced litigator, has failed to present his claim to the state courts,
19  suggests that Petitioner is attempting to delay the instant proceedings.

20      Moreover, as Respondent argues, it appears that Petitioner is likely to engage in more
21  abusive litigation if granted a stay. A document attached to the addendum filed on September
22  15, 2006, appears to be Petitioner's proposed amendment to his federal petition. (<u>See</u> Court Doc.
23  148, Exh. E at 1.) The amendment is not limited to a presentation of the newfound Brady claim.
24  Rather, Petitioner raises numerous issues both old and new, including: counsel's failure to file a
25  motion to dismiss the case (<u>Id</u>. at 1); a conflict motion hearing was held in his absence (<u>Id</u>. at 2);
26  a police report regarding an unnamed eye-witness who named someone else as the shooter was
27  also suppressed (<u>Id</u>. at 4); he was not arraigned within forty-eight hours (<u>Id</u>. at 5, 8); he had no
28  counsel at the time of the preliminary hearing (<u>Id</u>.); the superior court and Public Defender's

Office have not supplied requested documents (Id. at 6); the clothing that he wore on the day of the crime was lost before trial (Id. at 8); the identification procedure employed after the crime was unconstitutional (Id. at 10-16); and the prosecuting attorney committed misconduct in argument (Id. at 17).

Petitioner's delayed and continued presentation of several claims, both old and new, demonstrate that he is attempting to abuse the process by presenting claims that have already been presented to the Court or raise additional unauthorized claims, beyond his newfounded Brady claim. As such, the Court cannot find that Petitioner is not attempting to engage in abusive litigation tactics or intentional delay.

D.  Application of Taylor and Kelly to Stay of Exhausted Petition

The Ninth Circuit has questioned, but not resolved, whether the standards set forth by the United States Supreme Court in Rhines apply when the petitioner seeks to stay a fully exhausted petition. Jackson v. Roe, 425 F.3d 654, 661 (9th Cir. 2005). The Ninth Circuit noted that Rhines held that the district court authorized stays of *mixed* petitions in limited circumstances. Id. at 660. The Ninth Circuit suggested that the "three-step stay-and-abeyance procedure approved in Taylor and Kelly" might still be valid. Id.; see Kelly v. Small, 315 F.3d 1063 (9th Cir. 2002); Calderon v. District Court (Taylor), 134 F.3d 981 (9th Cir. 1998). This implicates that the limitations set on the stay and abeyance in Rhines might not apply. See Jackson, 425 F.3d at 659; see, e.g. Romero v. Runnels, No. CIV S-04-0459, 2006 WL 2460736 at *2 (E.D. Cal. Aug. 23, 2006); Lugo v. Kirkland, No. C 05-0580, 2006 WL 449130 at *4 (N.D. Cal. Feb. 22, 2006).

Respondent disagrees with the view expressed in Jackson, arguing that Taylor and Kelly were decided before Rhines. Kelly and Taylor held that a district court presented with a mixed petition should (1) allow a petitioner to amend the petition by deleting the unexhausted claims, (2) entertain a request for a stay in order to exhaust the claims, and (3) allow the petitioner to amend the stayed petition to add the claims once they are exhausted. Kelly, 315 F.3d at 1070; Taylor, 134 F.3d at 986-89. The Taylor court cautioned that district courts should not have "carte blanche" to stay petitions, giving the petitioner who seeks to stall the process as an example of where a stay should not be granted. Taylor, 134 F.3d at 986 n.11.

1    Respondent argues that a Petitioner seeking a stay of an exhausted petition should not be
permitted to evade the requirements imposed by the United States Supreme Court in Rhines.
According to Respondent, Rhines sought to address the very problem addressed in Kelly and
Taylor: how to accommodate the total exhaustion requirement and the AEDPA limitations period
when a petitioner presents a mixed petition. Rhines, 544 U.S. at 275; Kelly, 315 F.3d at 1070;
Taylor, 134 F.3d at 986. Respondent reasons that the better view is that Rhines supplants the
three-step procedure.

   The Court need not resolve the question whether Rhines applies to the instant stay,
because as Respondent submits, even if the minimal limitations of Taylor and Kelly apply,
Petitioner is still not entitled to a stay. Petitioner's substantial delay in presenting the Brady
claim, after he discovered the claims in "late 2004", has caused the one-year statute of limitations
to run. Moreover, as previously discussed, there is evidence that suggests Petitioner is attempting
to stall the process of federal review. See Taylor, 134 F.3d at 986 n.11. As such, the Court finds
that a stay is not warranted under Taylor and Kelly.

   Based on the foregoing, Petitioner's request to stay the petition is DENIED.


   IT IS SO ORDERED.

   Dated:   **November 20, 2006**              **/s/ Dennis L. Beck**
3b142a                                         UNITED STATES MAGISTRATE JUDGE