# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY TYRONE FOSTER, | CV F   99-5748 OWW DLB HC |
| Petitioner, | FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | [Doc. 1, 127, 134, 137] |
| ROSIE B. GARCIA, Warden, | |
| Respondent. | |
| _____/ | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND[1]

On January 26, 1994, following a jury trial in the Superior Court of the State of California, County of Fresno, Petitioner was found guilty of carjacking, in violation of California Penal Code section 215, subdivision (a); assault with a firearm, in violation of California Penal Code section 245, subdivision (a)(2); kidnaping for the purpose of carjacking in violation of California Penal Code section 209.5, subdivision (b)(1); and robbery, in violation of California Penal Code section 211.  The jury also found true an allegation that Petitioner personally used a firearm during the course of each offense, subjecting him to enhanced punishment under California Penal Code section 12022.5, subdivision (a).  (CT 168-170, 172-173.)  Following a

---

[1] This information is derived from the petition for writ of habeas corpus, Respondent's answer, and Petitioner's traverse.

1

bifurcated court trial, the court found true allegations that Petitioner had served three prior prison terms, subjecting him to enhanced punishment under California Penal Code section 667.5, subdivision (b), and that he had previously been convicted of a serious felony, subjecting him to enhanced punishment under California Penal Code section 667, subdivision (a).  (CT 202; RT 285.)  Petitioner's total commitment is life imprisonment plus twelve years.  (CT 205.)

Petitioner filed a timely notice of appeal to the California Court of Appeal, Fifth Appellate District.  (Respondent's Exhibit A, attached to Answer.)  The Fifth District Court of Appeal affirmed Petitioner's conviction and sentence on May 3, 1995.[2]  (Respondent's Exhibit D.)

Petitioner filed a petition for review in the California Supreme Court on June 15, 1995, which was denied on August 29, 1995.  (Respondent's Exhibits E, F.)

Before his appeal was decided, Petitioner filed a petition for writ of habeas corpus in the Fresno County Superior Court on August 25, 1994.  (Respondent's Exhibit G.)  The petition was denied on September 8, 1994.  The Court noted that Petitioner's pending appeal might resolve the issues raised.  (Respondent's Exhibit H.)

Petitioner filed a petition for writ of habeas corpus in the Fifth District Court of Appeal on January 5, 1996.  (Respondent's Exhibit I.)  The petition was denied, without comment, on September 27, 1996.  (Respondent's Exhibit J.)

On January 28, 1997, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court.  (Respondent's Exhibit K.)  The petition was denied, without comment, on May 28, 1997.  (Respondent's Exhibit L.)

Petitioner next filed a petition for writ of habeas corpus in the Fresno County Superior Court on October 28, 1997.  (Respondent's Exhibit M.)  On November 21, 1997, the court denied the petition, finding (1) that it did not comply with the California Rule of Court requiring habeas petitions to be submitted on an approved Judicial Council form, and (2) that prior petitions had been filed and further consideration was not warranted.  (Respondent's Exhibit N.)

---

[2] The opinion was certified for partial publication.  People v. Foster, 34 Cal.App.4th 766 (1995).

1    On December 5, 1997, Petitioner filed a petition for writ of habeas corpus in the Court of

2    Appeal, which was denied without comment on July 24, 1998.  (Respondent's Exhibits O, P.)

3    On August 4, 1998, Petitioner filed a petition for writ of habeas corpus in the California

4    Supreme Court.  (Respondent's Exhibit Q.)  The court denied the petition with a citation to In re

5    Clark, 5 Cal.4th 750 (1993), on February 24, 1999.  (Respondent's Exhibit R.)

6    Petitioner filed the instant federal petition for writ of habeas corpus on May 28, 1999.

7    (Court Doc. 1.)  Petitioner raised the following fifteen grounds for relief: (1) a pretrial "out of

8    court elimination identification" procedure violated his constitutional rights; (2) the state failed

9    to arraign him within 72 hours and delayed his trial in violation of his rights to due process; (3)

10   ineffective assistance of counsel based on numerous alleged acts and omissions relating to the

11   preliminary hearing; (4) the trial court's failure to inquire into trial counsel's state of mind on the

12   record at a Marsden[3] hearing violated his constitutional rights; (5) the exclusion of minorities

13   from the jury panel violated his right to equal protection and the trial court's failure to excuse a

14   juror violated his right to an unbiased jury; (6) ineffective assistance of counsel for denying

15   Petitioner his right to testify and various failures to investigate, file motions, and present

16   evidence; (7) ineffective assistance of appellate counsel for raising frivolous issues on appeal and

17   failing to raise the issues Petitioner identified; (8) the Court of Appeal for the Fifth Appellate

18   District violated his right to due process by failing to allow Petitioner to respond to trial

19   counsel's declaration regarding ineffective assistance allegations; (9) "newly discovered

20   evidence" of ineffective assistance of counsel for committing perjury in declarations to the court

21   of appeal; (10) insufficiency of the evidence; (11) the verdict for one count was not unanimous;

22   (12) the trial court erred in denying Petitioner's motion to exclude evidence of the victim's

23   "professional aspirations"; (13) the trial court erred in denying Petitioner's motion for a mistrial

24   based on a witness's comment "when he [Petitioner] was first released"; (14) the trial court erred

25   in submitting a jury instruction based on CALJIC No. 2.21.2; and (15) the trial court erred in

26   refusing to allow Petitioner to argue his motion for a new trial.  (Petition, at 8-99.)

27

28   [3] People v. Marsden, 2 Cal.3d 118 (1970).

3

1    On July 28, 1999, the Court granted Petitioner's motion to withdraw his claim regarding

2    the lack of a unanimous verdict, and to substitute a claim of a Miranda violation as Ground

3    Eleven. (Court Doc. 17.)

4    On June 27, 2000, the federal petition was dismissed, on Respondent's motion, as being

5    filed outside the AEDPA statute of limitations. (Court Doc. 32.) The Court found that all of the

6    state petitions in Petitioner's second round of state filings were successive under the Ninth

7    Circuit's decision in Dictado v. Ducharme, 189 F.3d 889, 892 (9th Cir. 1999), and were not

8    "properly filed." Dictado, was subsequently overruled by Artuz v. Bennett, 531 U.S. 4, 8 (2000),

9    and the judgment dismissing the petition as untimely was vacated by the Ninth Circuit Court of

10   Appeals, and the case was remanded to this Court. (Court Doc. 49.)

11   On July 12, 2002, the Court directed Respondent to file a response. (Court Doc. 84.) On

12   October 2, 2002, Respondent filed a motion to dismiss the petition for failure to exhaust claims

13   2, 5, and 9, by presenting them to the California Supreme Court. (Court Doc. 91.)

14   On November 15, 2002, the Court granted Petitioner's request to withdraw his original

15   claims 10, 12, 13, and 14. (Court Doc. 98.)

16   On April 2, 2003, the undersigned recommended that the instant petition be dismissed

17   because it contained unexhausted claims; specifically, claims 2, 5, and 9. The Court advised

18   Petitioner that he could avoid dismissal by withdrawing the unexhausted claims. The Court

19   further advised Petitioner that he could then either proceed with the exhausted claims or move to

20   hold the petition in abeyance and return to state court to exhaust claims 2, 5, and 9. (Court Doc.

21   107.)

22   On April 21 and April 28, 2003, Petitioner moved to withdraw claims 2, 5, and 9. He did

23   not request abeyance. (Court Doc. 108, 111.) The Court granted the motion on May 20, 2003.

24   (Court Doc. 114.) Accordingly, the motion to dismiss the petition was denied, and Respondent

25   was ordered to submit an answer on or before November 12, 2003. (Court Docs. 119, 121.)[4]

26   Respondent filed an answer to the eight remaining claims for relief, on November 12,

27

28       [4] Petitioner sought to reinstate claims 2, 5, and 9 on August 14, 2003, but withdraw the claims again on September 8, 2003. (Court Docs. 122, 125.)

4

1  2003. (Court Doc. 127.) Petitioner filed a traverse on February 26, 2004. (Court Doc. 134.)

2  On November 30, 2005, Petitioner filed a request to exhaust a claim based on the United

3  States Supreme Court's decisions in <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S.Ct. 2531, 159

4  L.#d.2d 403 (2004) and <u>United States v. Booker</u>, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621

5  (2005). (Court Doc. 142.) Respondent filed an opposition to Petitioner's motion on December

6  9, 2005. (Court Doc. 143.) The motion was denied on January 25, 2006. (Court Doc. 145.)

7  On July 5, 2006, Petitioner filed a second request for a stay based on a newly discovered

8  claim. (Court Doc. 147.) On September 15, 2006, Petitioner filed an addendum to his request.

9  (Court Doc. 148.) Respondent filed an opposition to Petitioner's request on September 22, 2006.

10  (Court Doc. 149.) In an order issued simultaneously herewith, the Court has denied Petitioner's

11  motion for a stay.

12  STATEMENT OF FACTS[5]

13  At about 10 or 10:30 p.m. on October 19, 1993, Darnell Packard arrived at his home at 2112 East Church [in Fresno]. He was driving his brother's white Jeep. When he arrived, he pulled into the driveway, then got out of the vehicle to move a trash can. He left the keys in the ignition and the motor running, as he intended to open the garage door and pull the Jeep into the garage.

Packard had just moved the trash can when he was accosted by a man who was wearing a ski mask and had a cocked gun. The man grabbed Packard by the shoulder, then told him to get down and get in the Jeep. Packard opened the driver's door and the man pushed him into the vehicle. The man had the gun to the back of Packard's head and got into the vehicle with Packard. He continued to hold onto Packard and told Packard not to look at him.

Still holding the gun to Packard's head, the man backed the Jeep out of the driveway and drove off with Packard. The man said he would shoot Packard if Packard tried to jump. The man drove to an alley and stopped. He instructed Packard to climb over the seat into the back seat. Packard did as he was told. In the back seat was a plastic bag which the man placed over Packard's head. When Packard pleaded with him, the man told Packard to shut up or Packard was going to die that way.

Packard managed to bite a hole in the bag so he could breathe. A few seconds later, some headlights turned into the alley. Packard was instructed to get on the floor and face the back passenger side door. The man, who kept the gun right to Packard's head, told Packard to stay down, keep the bag over his head, and not try to get out.

Packard got down as he was told and they began to move again. Packard pulled up on the front of the bag so he could see where they were going. After they turned onto Elm Street, the vehicle was "going kind of fast" and the man

---

[5] The following summary of facts are taken from the opinion of the California Court of Appeal, Fifth Appellate District appearing as Exhibit D, of the Answer to the Petition for Writ of Habeas Corpus. The Court finds the state Court of Appeal's summary is a correct and fair summary of the facts of the case.

again told Packard not to try to jump out or he would shoot. At this point, the man still had hold of the back of Packard's shirt and the gun to the back of Packard's head.

As they proceeded up Elm Street, the man removed the ski mask. They turned onto California and proceeded toward Martin Luther King Boulevard. As they crossed that street, Packard sat up, looked in the rear view mirror, and recognized the man as Ricky Foster. Packard had grown up with Foster's cousin and had known Foster for several years. He had last seen Foster a week or two before the incident.

Foster also looked in the mirror; when he saw Packard, he said he was going to take Packard out into the country and blow his head off. Fearing for his life, Packard grabbed Foster's arm and they wrestled for the gun. Packard was reaching between the seats; the top part of his body was in the front seat. At this point, the Jeep was traveling 50 to 55 miles an house and swerving as the men struggled.

The Jeep crashed into a tree by Edison High School. Packard remembered being thrown forward and then backward. He found himself in the back seat; the driver's seat had fallen all the way back and Foster was beside him. They continued to struggle for the gun. Packard pulled on the gun to try to get it away from Foster; the gun discharged once, the Jeep door opened, and Packard fell out. Foster said something which sounded like Packard's name.

Packard got up, but could only see the shadow of a person because his head had hit the windshield and his vision was hindered by blood running in his eyes. He could not tell if the person was coming toward him or not, so he pointed the gun and fired at the shadow. He believed the gun went off two or three times, after which it would no longer fire. Packard did not yell anything to Foster while he was shooting, nor, as far as he could recall, did he chase [Petitioner].[6]

Packard ran to the nearby home of Amalia Robles, at 720 East California. When Robles answered the door, Packard asked her to call the police, then he laid the gun down on the porch. When a police officer arrived, Packard reported that he had been carjacked and the vehicle had wrecked. The officer then proceeded to the location of the accident, while Packard waited at the house for an ambulance. A friend, Kevin Coleman, came over to help. Packard described himself as being excited and almost "knocked out in a sense." According to Coleman, Packard appeared to be in shock and said he had been "jacked." Packard said he took the gun from the person who did it, and he pointed to the apartment at which he had left the gun. Coleman assisted him in reaching the paramedics, who were at the accident site.

Fresno Police Officer Amey responded to the scene. She found [Petitioner] in a fenced area at 415 Kern Street, just east of California. He was wearing dark sweat clothes. Officer Ellis also responded. When he contacted Packard, Packard was covered with blood and appeared to be in some pain. He was very distraught. Packard told Ellis that he had been at his residence earlier in the evening and that he had parked his car in the driveway. When he returned to the vehicle from the front of the house, he was accosted by a Black male who had him enter the vehicle, tried to put a plastic bag over his head, took him westbound on California, and intimated that he was going to take Packard out in the country and kill him. Packard said the Black male stated he had a gun, and that a struggle ensued over the weapon, after which they had the accident. Packard reported that

---

[6] Trina Myers was returning home from a student union meeting at Fresno City College when she saw the Jeep and two men fighting nearby. The one man chased the other person into the street and shot at him three times. While he was shooting, he yelled, "Motherfucker." The police subsequently took Myers to an ambulance, where she identified Foster.

he was able to fight with the suspect, take the gun from him, and fire shots at the assailant.

The police found that the Jeep's windshield was broken outward on the passenger side, consistent with a person's face hitting it during a traffic accident. There was some blood in the vehicle, near the windshield and on the right front passenger side. A ski mask was recovered from the front floorboard on the driver's side. A .45 caliber automatic handgun was located on the porch of the residence at 720 East California. The slide was in a locked back position; this occurs after the last round is fired from the magazine. There were spots of blood on the porch and wall, directly above the gun.

Packard was eventually transported to the hospital. He had received cuts on his forehead and the left side of his face; a fractured left shoulder; a sore nose; and a black eye. In addition, he had lost two teeth and a third was broken. At the hospital, he was questioned regarding the description of the suspect. He was not asked for, nor did he give, [Petitioner's] name at that time. At trial, Packard explained that he had heard [Petitioner's] voice before the incident; when he saw the person with the ski mask, he thought he knew the voice, but he was not sure.

[Petitioner] was treated at the same hospital. He had suffered a bullet wound to the chest and another to the leg. According to Dr. Nejat-Bina, the treating physician, [Petitioner] had none of the injuries which are commonly seen in victims of motor vehicle accidents.

Packard saw [Petitioner] again at the hospital. [Petitioner] was wearing the black pants he had worn during the incident, although his shirt was now off.

(Exhibit D, Opinion, at 3-6.)

## DISCUSSION

A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059

1   (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant

2   petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

3   B.     Standard of Review

4          This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

5   custody pursuant to the judgment of a State court only on the ground that he is in custody in

6   violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

7          The AEDPA altered the standard of review that a federal habeas court must apply with

8   respect to a state prisoner's claim that was adjudicated on the merits in state court.  Williams v.

9   Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus

10  will not be granted unless the adjudication of the claim "resulted in a decision that was contrary

11  to, or involved an unreasonable application of, clearly established Federal law, as determined by

12  the Supreme Court of the United States;" or "resulted in a decision that was based on an

13  unreasonable determination of the facts in light of the evidence presented in the State Court

14  proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of

15  the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v.

16  Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply

17  because that court concludes in its independent judgment that the relevant state-court decision

18  applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations

19  omitted).  "Rather, that application must be objectively unreasonable."  Id. (citations omitted).

20         While habeas corpus relief is an important instrument to assure that individuals are

21  constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

22  (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

23  criminal conviction is the primary method for a petitioner to challenge that conviction.  Brecht v.

24  Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's

25  factual determinations must be presumed correct, and the federal court must accept all factual

26  findings made by the state court unless the petitioner can rebut "the presumption of correctness

27  by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115

28  S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day,

1   110 F.3d 1380, 1388 (9th Cir. 1997).

2   In the instant case, the California Supreme Court's denial of the claims was a "silent

3   denial." Because the decisions of the lower courts do not include a reasoned decision addressing

4   the merits of these claims (with the exception of Ground Fifteen), this Court cannot "look

5   through" the unexplained California Supreme Court decision to the last reasoned decision, as

6   provided by Ylst v. Nunnemaker, 501 U.S. 797, 803-04, 111 S.Ct. 2590, 115 L.Ed.2d 706

7   (1991). Under these circumstances, the federal court independently reviews the record to

8   determine whether the state court's decision was contrary to, or involved an unreasonable

9   application of, clearly established federal law. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir.

10  2002); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) (Delgado II). However, the state

11  court's ultimate decision is still entitled to deference. Pirtle, 313 F.3d at 1167.

12  C.    Ground One: Pretrial Identification Procedure[7]

13  Petitioner contends that the pretrial identification procedure violated his constitutional

14  rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments. Specifically, Petitioner

15  contends that after he informed the officer that he did not want to answer questions and had

16  requested an attorney, the officer conducted the identification procedure at the hospital.

17  Petitioner contends this violated his rights under the Fifth Amendment and Miranda, 384 U.S.

18  436. Petitioner further asserts that the "criminal prosecution proceedings had commenced,

19  suggesting that he was deprived of his Sixth Amendment right to counsel. (Petition, at 13.)

20  Petitioner also invokes the "poisonous tree doctrine." (Petition, at 13, 14, 17.) Lastly, Petitioner

21  claims his due process rights were violated. (Petition, at 14.)

22  1.    Fourth Amendment Claim

23  In his petition, Petitioner contends that conducting the field showup after criminal

24  proceedings had commenced violated the Fourth Amendment, among other constitutional rights.

25  Petitioner further contends that the victim's in court identification was the "fruit of the poisonous

26  tree." (Petition, at 17.) As Respondent submits, it is unclear whether Petitioner believes that the

27

28
    ─────────────────────
    [7] The Court presents the claims as they are numbered in the petition for writ of habeas corpus.

identification procedure constituted an illegal search, or whether he contends he was unlawfully

detained at that point.  In either case, his claim fails.

A federal district court cannot grant habeas corpus relief on the ground that evidence was

obtained by an unconstitutional search and seizure if the state court has provided the petitioner

with a "full and fair opportunity to litigate" the Fourth Amendment issue.  Stone v. Powell, 428

U.S. 465, 494, 96 S.Ct. 3037, 3052 (1976);  Woolery v. Arvan, 8 F.3d 1325, 1326 (9th Cir.

1993), *cert denied*, 511 U.S. 1057 (1994).  The only inquiry this Court can make is whether

petitioner had a fair opportunity to litigate his claim, not whether petitioner did litigate nor even

whether the court correctly decided the claim.  Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th

Cir. 1996); see also Gordon v. Duran, 895 F.2d 610, 613 (9th Cir. 1990) (holding that because

Cal. Penal Code § 1538.5 provides opportunity to challenge evidence, dismissal under Stone was

necessary).

The policy behind the Stone Court's analysis is that the exclusionary rule is applied to

stop future unconstitutional conduct of law enforcement.  Stone, 428 U.S. at 492.  However,

excluding evidence that is not untrustworthy creates a windfall to the defendant at a substantial

societal cost.  See Stone, 428 U.S. at 489-90; Woolery, 8 F.3d at 1327-28.  Thus, the Ninth

Circuit has described the rationale for this rule by saying:

> The holding is grounded in the Court's conclusion that in cases where a
> petitioner's Fourth Amendment claim has been adequately litigated in state court,
> enforcing the exclusionary rule through writs of habeas corpus would not further
> the deterrent and educative purposes of the rule to an extent sufficient to counter
> the negative effect such a policy would have on the interests of judicial efficiency,
> comity and federalism.

Woolery, 8 F.3d at 1326; see also Stone , 428 U.S. at 493-494.

California provides defendants such an opportunity in the trial court through California

Penal Code section 1538.5.  Petitioner could, and did, raise this claim in his state habeas

petitions. (See Respondent's Exhibits G, I, K, M, O, Q; see Villafuerte v. Stewart, 111 F.3d 616,

627 (9th Cir. 1997).  Because the state court provided Petitioner with a "full and fair opportunity

to litigate" his Fourth Amendment issue, the claim must be denied.  Stone, 428 U.S. at 494.

2. Fifth Amendment and Miranda Claim

Petitioner contends that his Fifth Amendment and Miranda rights were violated.  Petitioner

states that after being advised of his <u>Miranda</u> rights, he refused to answer questions and requested an attorney. (Petition, at 13.)  Petitioner contends that officer Ellis nonetheless arranged the field showup. (Petition, at 13-15, 17.)

A lineup or showup does not implicate the Fifth Amendment privilege against self-incrimination. <u>Kirby v. Illinois</u>, 406 U.S. 682, 687-688 (plurality opinion); <u>United States v. Wade</u>, 388 U.S. 218, 221 (1967); <u>Schmerber v. California</u>, 384 U.S. 757, 761, 763-764 (1966). The privilege against self-incrimination "offers no protection against compulsion to submit to fingerprinting, photographing or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." <u>Schmerber v. California</u>, 384 U.S. at 764.

The Supreme Court has specifically held that a lineup is not testimonial in nature, and therefore not a violation of the Fifth Amendment:

> We have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance.  It is compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any knowledge he might have.

<u>Wade</u>, 388 U.S. at 222.  It necessarily follows that there can be no violation of <u>Miranda v. Arizona</u>, as Miranda is based on the Fifth Amendment privilege against compulsory incrimination. <u>Kirby</u>, 406 U.S. at 688 (plurality opinion).

3. <u>Sixth Amendment Claim</u>

Petitioner contends that at the time of the pretrial identification, criminal proceeding had commenced and he had requested an attorney. (Petition, at 13, 17-18.)

The Sixth Amendment guarantees a criminal defendant the right to have the assistance of counsel at all "critical stages" of the proceedings. <u>Wade</u>, 388 U.S. at 224.  In <u>United States v. Wade</u>, the Supreme Court held that a "postindictment lineup" is a critical stage of a prosecution, so that the accused has the right to an attorney at such a proceeding. <u>Id</u>. at 237.  The holding in Wade specifies a "postindictment lineup" because the right to counsel does not attach until "at or after the initiation of adversary judicial criminal proceedings - - whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." <u>McNeil v. Wisconsin</u>,

11

501 U.S. 171, 175 (1991) (quoting United States v. Gouveia, 467 U.S. 180, 188 (1984)).

Petitioner is simply mistaken in stating that "criminal prosecution proceedings had commenced" when the lineup was conducted.  (Petition, at 13, 18.)  The field showup took place at the Hospital shortly after the offense occurred on October 19, 1993, on the same evening or very early the next morning.  (RT 117-118; see also Petition, Exhibit A.)

In Kirby v. Illinois, 406 U.S. at 690, the Supreme Court declined to extend the right to counsel under the Sixth Amendment to identification procedures that take place before criminal proceedings have begun.  Id. (plurality opinion).  Therefore, because the lineup was clearly performed before the "criminal proceedings" had commenced, Petitioner's right to counsel was not violated.

The Court recognizes, as does Respondent, that the decision in Kirby v. Illinois, is from a plurality of the Court.  It has been stated by the Ninth Circuit Court of Appeals that a plurality opinion cannot be clearly established law, as determined by the Supreme Court of the United States.  Jacobsen v. United States Postal Service, 993 F.2d 649, 655 (9th Cir. 1992) ("The Ninth Circuit has not taken pluralities as being controlling.")).  The Eighth Circuit, however, has treated a plurality opinion as clearly established law where the Supreme Court and federal courts of appeal have cited the opinion in subsequent cases.  Shafer v. Bowersox, 329 F.3d 637, 651 (8th Cir. 2003).  The Supreme Court has cited and applied Kirby in Moore v. Illinois, 434 U.S. 220, 226-229 (1977) and Moran v. Burbine, 475 U.S. 412, 428-432 (1986), without calling its reasoning and decision into question.

Even if Kirby is not clearly established law, the Supreme Court has firmly and clearly established the rule that the Sixth Amendment right to counsel does not attach until "at or after the limitation of adversary judicial criminal proceedings . . ." McNeil, 501 U.S. at 175; Moran, 475 U.S. at 431-432; United States v. Gouveia, 467 U.S. at 188 ("The view that the right to counsel does not attach until the initiation of adversary judicial proceedings has been confirmed by this Court in cases subsequent to Kirby.").

Based on the foregoing, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

///

12

1

### 4. Due Process Claim

2    Petitioner contends that police employed an unfair tactic of showing him to the victim to

3  "promot[e] familiarity."  (Petition, at 15.)  Petitioner contends that it was unnecessarily

4  suggestive and tainted the subsequent in-court identification.  (Petition, at 16-17.)

5    It is clear that a defendant has a due process right not to be identified prior to trial in a

6  manner that is "unnecessarily suggestive and conducive to irreparable mistaken identification."

7  Stovall v. Denno, 388 U.S. 293, 301-02, 87 S.Ct. 1967, 1972 (1967), *overruled on other grounds*

8  *by* Griffith v. Kentucky, 479 U.S. 314, 326, 107 S.Ct. 708 (1987).  The U.S. Supreme Court has

9  adopted a "totality of the circumstances" test to be used in the analysis of identification

10  testimony.  Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253 (1977).  Identification

11  testimony, even if flawed by improper police behavior, remains admissible if it appears reliable.

12  Id.  Thus, an unnecessarily suggestive identification is not subject to a "per se" exclusion.  Id.

13    The threshold question for the Court is whether the lineup was impermissibly suggestive.

14  Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243 (1977).   However, even if flawed by

15  improper police behavior, identification testimony remains admissible if it appears reliable.  Id.;

16  see also Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 382 (1972); Simmons v. United States,

17  390 U.S. 377, 384, 88 S.Ct. 967 (1968); Stovall v. Denno, 388 U.S. 293; 302, 87 S.Ct. 1967,

18  1972 (1967).

19    The factors to be considered when assessing whether an identification was reliable are: (1)

20  the informer's opportunity to view the criminal at the time of the crime, (2) the witness' degree

21  of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of

22  certainty demonstrated by the witness at the confrontation, and (5) the length of time between the

23  crime and confrontation.  Neil v. Biggers, 409 U.S. 188,199-200, 93 S.Ct. 375, 382 (1972).

24    Here, Mr. Packard saw Petitioner's face in the car when he removed the ski mask, and he

25  recognized him as an acquaintance, prior to the identification at the hospital.  (RT 77, 114, 117.)

26  Mr. Packard testified that he observed Petitioner again at the hospital, when "they opened up the

27  door and let me see him."  (RT 117-118.)  As Respondent points out, Mr. Packard's attention

28  was completely focused on trying to see the perpetrator as he was the victim of the offense.  (RT

76.)

1    Prior to the identification at the hospital, Mr. Packard described the perpetrator as a Black

2 male with a closely shaved head, wearing black pants and a black sweatshirt.  (Petition, Exhibit

3 A, at 3.)  When Officer Ellis made contact with Petitioner near the scene of the crash, he was

4 wearing black pants, and he fit the description of the suspect given by Mr. Packard  (RT 139;

5 Petition, Exhibit A, at 3.)  In addition, while at the hospital, Mr. Packard heard the voice of

6 another patient, and recognized it as that of the assailant. (Petition, Exh. A, at 4.)  During that

7 time, Petitioner was wheeled by on a gurney.  (Id.)

8    Little time passed between the offense and the identification, as both Petitioner and Mr.

9 Packard were taken from the crash to the hospital, where the identification took place.  Mr.

10 Packard was unequivocal in his identification of Petitioner, both at the hospital and in court.  (RT

11 77, 118; Petition, Exhibit A, at 5-6.)

12    Thus, viewing the totality of the circumstances of Mr. Packard's identification, the show-up

13 was reliable, and there is no danger that the in-court identification was a result of a previous

14 suggestive identification procedure.  Based on the foregoing, the state courts' determination of

15 this issue was not contrary to, or an unreasonable application of, clearly established Supreme

16 Court precedent.

17 D.    Ground Three: Ineffective Assistance Counsel - Preliminary Hearing

18    In Ground Three of the petition, Petitioner contends that he deprived of the effective

19 assistance of counsel at his preliminary hearing.  Petitioner contends that he was held to answer

20 due to the ineffectiveness of attorney Gail Bristo who represented him at the preliminary hearing

21 only.

22    The law governing ineffective assistance of counsel claims is clearly established for the

23 purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe,

24 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective

25 assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S.

26 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First,

27 the petitioner must show that counsel's performance was deficient, requiring a showing that

28 counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by

the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner must show that counsel's

representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. The court must also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994). More precisely, petitioner must show that (1) his attorney's performance was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different.

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984). Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must necessarily fail. Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

A preliminary hearing is a critical stage of a criminal prosecution, at which a defendant has a Sixth Amendment right to counsel. Coleman v. Alabama, 399 U.S. 1, 10 (1970); Menefield v. Borg, 881 F.2d 696, 698 (9th Cir. 1989).

As Respondent submits, the role of counsel at a preliminary hearing is different from counsel's role at trial. See Adams v. Illinois, 405 U.S. 278, 281-283 (1972). In California, the purpose of a preliminary hearing is only "to establish whether there exists probable cause to believe that the defendant has committed a felony." Cal. Penal Code § 866(b); see also Whitman v. Superior Court, 54 Cal.3d 1063, 1071 (1991) (en banc.) The "probable cause determination

may be based entirely on the hearsay statements related by a police officer with certain

qualifications and experience." <u>Id.</u> at 1070, <u>see</u> Cal. Penal Code § 872(b).  The defendant's right

to present witnesses is circumscribed:

> The magistrate shall not permit the testimony of any defense witness unless the
> offer of proof discloses to the satisfaction of the magistrate, in his or her discretion, that
> the testimony of that witness, if believed, would be reasonably likely to establish an
> affirmative defense, negate an element of the crime charged, or impeach the testimony
> of a prosecution witness or the statement of a declarant testified to by a prosecution
> witness.

Cal. Penal Code § 866(a).

    In his petition, Petitioner provides two separate lists of alleged errors.  In the first category,

Petitioner vaguely claims that counsel refused to prepare and present a defense; refused to secure

the services of investigators; refused to present evidence which would establish mistaken

identity; failed to make pretrial motion(s); failed to object to prosecutor's comments; and did not

engage in extensive cross-examination of any of the witnesses.

    These claims are nothing more than conclusory allegations, devoid of specific factual

support.  As Respondent points out, Petitioner must do more than simply list examples of

ineffective assistance.  <u>Turner v. Calderon</u>, 281 F.3d 851, 878 (9th Cir. 2002).   In sum,

"[c]onclusory allegations which are not supported by a statement of specific facts do not warrant

habeas relief." <u>James v. Borg</u>, 24 F.3d 20, 26 (9th Cir. 1994).

     As did Respondent, the Court will address the three major claims that Petitioner appears

to be raising in his petition.

    1. <u>Failure to Call Witnesses</u>

    Petitioner contends that counsel should have subpoenaed "expert witnesses and Petitioner's

orthopedic surgeon(s)" and "alibi witnesses."  (Petition, at 23, 26.)  As previously stated, under

California law, the right to present defense witnesses at the preliminary hearing is limited "to

establish an affirmative defense, negate an element of the crime charged, or impeach the

testimony of a prosecution witness or the statement of a declarant testified to by a prosecution

witness."  Cal. Penal Code § 866(a).  Despite this limitation, Petitioner's claim nonetheless fails

on the merits.  Petitioner has submitted Ms. Bristo's (counsel at preliminary hearing) declaration

in which she states that Petitioner did not provide any information about witnesses before the

hearing and there was no reason to subpoena the orthopedic surgeon for a preliminary hearing. (Petition, Exhibit H, at 1, 3.)  Petitioner does not identify the witness or what the witness would have testified to that would have been helpful to his case.  See Villafuerte v. Stewart, 111 F.3d 616, 630 (9th Cir. 1997); United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1987).   Moreover, in light of the sufficient evidence presented at the preliminary hearing, any such testimony would not have made a difference.  (See CT 26-28.)  Accordingly, Petitioner's claim fails on the merits.

2. Police Report

Petitioner contends that counsel should have impeached the police officers with a discrepancy between the description of the carjacker reflected in the police report and the description given by the victim at the preliminary hearing.  (Petition, at 25-26.)  The police report reflects that the victim identified the carjacker as "a Black male, dark completed, wearing black pants and black sweatshirt and closely shaved head."  (Petition, Exhibit A, at 3.)  On cross-examination, at the preliminary hearing, the victim acknowledged that as the description given, but stated "I didn't know what the head was like."  (CT 48.)

Petitioner's claim is factually baseless, as no police officer testified at the preliminary hearing.  The only testimony came from the victim.  (See CT 3-67.)  Therefore, counsel could not have impeached testimony that did not exist at the hearing.  In any event, any discrepancy between the victim's statement and the police report was brought to light through cross-examination of the victim.  (CT 48.)

3. Failure to Move to Suppress Evidence of Showup

Petitioner claims that counsel should have sought to suppress the field showup identification as a violation of his Miranda Rights.  Petitioner's claim fails.

As previously discussed, Miranda is based on the privilege against compulsory incrimination.  Kirby, 406 U.S. at 688 (plurality opinion).  A line-up or show-up does not implicate the privilege against self-incrimination, and therefore it does not provide a basis for a Miranda violation.  Id. at 687-688 (plurality opinion); Wade, 388 U.S. at 222.  Accordingly, as there was no basis for a motion to suppress the evidence of the show-up conducted at the hospital, counsel could not have been ineffective.  See Jackson v. Calderon, 211 F.3d 1148, 1155 (9th Cir. 2000); James v. Borg, 24 F.3d at 26; Lowry v. Lewis, 21 F.3d 344, 345 (9th Cir. 1994).

17

1    Based on the foregoing, the state courts' determination of this issue was not contrary to, or an

2    unreasonable application of, clearly established Supreme Court precedent.

3  E.    Ground Four: Trial Court's Inquiry Into Petitioner's Motion to Substitute Counsel

4        In Ground Four of the petition, Petitioner contends that the trial court failed to make an

5    adequate inquiry at his hearing on his motion to substitute counsel.  It appears that Petitioner's

6    only complaint is the trial court did not inquire into trial counsel's "state of mind" during the

7    hearing. (Petition, at 28, 32, 36-38.)

8        Petitioner was arraigned on December 6, 1993, at which time the law firm of John Barker

9    and Associates was appointed to represent him.  (CT 73.)  On December 29, 1993, a hearing was

10   held on the prosecution's motion for an order to compel Petitioner to submit to blood and hair

11   testing. (CT 83; see CT 75.)  Moton Holt of John Barker and Associates was present to represent

12   Petitioner.  (CT 83; see Supp. RT dated December 29, 1993.)

13       At that time, Petitioner had filed a motion to substitute counsel, pursuant to People v.

14   Marsden, 3 Cal.3d 118 (1970).[8]  (CT 83; Supp. RT dated December 29, 1993, at 1.)[9]  Petitioner

15   appears dissatisfied with counsel Gail Bristo, who represented him at the preliminary hearing, and

16   David Rugendorf, who was assigned as trial counsel.  (Petition, at 28, 31; see also Petition Exh. G

17   [declaration of David S. Rugendorf], at 1.)

18       "[T]o compel one charged with grievous crime to undergo a trial with the assistance of an

19   attorney with whom he has become embroiled in irreconcilable conflict is to deprive him of the

20   effective assistance of any counsel whatsoever."  Brown v. Craven, 424 F.2d 1166, 1170 (9th Cir.

21   1970).  The trial court must then conduct an "appropriate inquiry into the grounds for such a

22   motion" on the record before proceeding further.  See Schell v. Witek, 218 F.3d 1017, 1026 (9th

23   Cir. 2000).  In a habeas corpus petition, the Court must determine whether the trial court's denial

24   of a petitioner's Marsden motion "actually violated [the petitioner's] constitutional rights in that

25   _____

26       [8] People v. Marsden, established the right of a defendant personally to raise the issue of ineffective
     assistance by means of a motion to discharge his or her attorney and appoint a new one.

27       [9] Petitioner actually filed three motions to substitute counsel.  (Exhibit D, attached to Answer, at 39.)  In
28   the instant petition, Petitioner is only challenging the Marsden hearing that was conducted on December 29, 1993.
     (Petition, at 28-38.)

the conflict between [the petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment."  Id.

In his petition, Petitioner is challenging the fact that during the hearing on his Marsden motion, trial counsel, David Rugendorf, was not present, and the trial court did not inquire into his "state of mind."  (Petition, at 32.)  Petitioner contends the following regarding trial counsel: (1) trial counsel failed/refused to file any motions that were discussed and agreed to be filed at the December 22, 1993, hearing; (2) trial counsel "waived off" the motion hearing without conferring with Petitioner and failed to file any motions in his defense; (3) trial counsel waived Petitioner's trial confirmation of December 16, 1993 to December 29, 1993, without conferring with him; (4) trial counsel never appeared at any of the court hearings since his assignment on December 9, 1993; (5) trial counsel failed to develop and pursue a meritorious legal defense in preparation for jury trial; (6) trial counsel failed to secure an expert witness crucial to his legal defense; (7) trial counsel failed to confer with Petitioner about any development with his legal defense; and (8) trial counsel failed to file a motion challenging the tainted identification procedure at the December 22, 1993, motions hearing. (Petition, at 33-34.)  As a result of these alleged deficiencies, Petitioner claims that a host of errors occurred during and after his trial.  (Petition, at 34-35.)

On December 29, 1993, the trial court heard argument, recessed, then heard further argument from Ms. Bristo and Moton Holt.  (Court Doc. 156; RT of Marsden Hearing, filed under Seal) The trial court denied the motion.  As previously stated, Petitioner's claim is premised on the assertion that, at his hearing, the court did not inquire into Mr. Rugendorf's "state of mind." (Petition, at 28, 32, 35-38.)  However, the record of the Marsden hearing is clear and Petitioner acknowledges that he was permitted to state the reasons for his dissatisfaction with counsel on the record.  (See RT of Marsden Hearing, filed under Seal; Petition, at 34-36, 38.)  The trial court thoroughly and adequately allowed Petitioner to voice his grievances regarding counsel.  The trial court listened to each of Petitioner's complaints, asked questions of Petitioner and present counsel.  Petitioner simply made no showing that he was not receiving adequate legal assistance or that an irreconcilable conflict had arisen, and the trial court denied the motion.  Specifically, the Court found that the continuance of the preliminary hearing was justified, Petitioner's other

claims regarding preliminary and trial counsel were unfounded, Petitioner had failed to comply with investigators requests, and counsel had done everything possible to prepare the case for trial. (RT of Marsden Hearing, at 31.)  However, as Respondent submits, although it would have been desirable for trial counsel to be present; this is true only from the standpoint that defense counsel might be able to explain his actions and omissions in order to demonstrate that there is not a "total lack of communication or other significant impediment."  See Schell, 218 F.3d at 1026.  The Court notes that Moton Holt was present at the hearing, as he was sitting in for trial counsel Mr. Rugendorf, and made comments at the Marsden hearing regarding the status and preparation of the investigation into Petitioner's case.  (See RT of Marsden Hearing, at 29-30.)  Here, considering that Petitioner's claims were unfounded, the trial court was implicitly able to reach its conclusion without further input from trial counsel.

However, even if the trial court erred in failing to inquire into Mr. Rugendorf's "state of mind", Petitioner's dissatisfaction with counsel is not per se prejudicial.  Schell, 218 F.3d at 1026. Petitioner must show that the failure to inquire resulted in a denial of effective assistance of counsel.  Id.  Here, Petitioner has failed to demonstrate a complete breakdown in communication or deterioration of the relationship as in Schell.  Although Petitioner may have had disagreements with counsel over trial tactics and may have been unsatisfied with his preparation and representation, Petitioner simply does not show that his Sixth Amendment right to counsel was violated by the trial court's denial of his Marsden motion.  See Morris v. Slappy, 461 U.S. 1, 13-14 (1983) (holding that Sixth Amendment requires only competent representation and does not guarantee a meaningful relationship between a defendant and counsel).

In addition, the majority of Petitioner's complaints regarding trial counsel are claims that are separately raised in the instant petition, and as discussed below, are without merit.  As to all the claims, Petitioner has simply failed to allege any deficiencies in counsel's representation that rise to the level of ineffective assistance of counsel under the Sixth Amendment or that he was prejudiced thereby.  Accordingly, the California Supreme Court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

F.    Ground Six: Ineffective Assistance of Trial Counsel

Petitioner raises several grounds in which he claims that trial counsel was ineffective.

1   (Petition, at 43.)

2       As discussed under section D, in a petition for writ of habeas corpus alleging ineffective

3   assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S.

4   668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First,

5   the petitioner must show that counsel's performance was deficient, requiring a showing that

6   counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by

7   the Sixth Amendment.  Strickland, 466 U.S. at 687.  The petitioner must show that counsel's

8   representation fell below an objective standard of reasonableness, and must identify counsel's

9   alleged acts or omissions that were not the result of reasonable professional judgment considering

10  the circumstances.  Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir.

11  1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a strong

12  presumption that counsel's conduct falls within the wide range of reasonable professional

13  assistance.  Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21

14  F.3d 1446, 1456 (9th Cir.1994).

15      Second, the petitioner must show that counsel's errors were so egregious as to deprive

16  defendant of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  The court must

17  also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's

18  ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356,

19  1461 (9th Cir. 1994).

20          1.    Petitioner's clothing

21      Petitioner contends that counsel was ineffective for failing to challenge the inconsistency in

22  the victim's description of the suspect's clothing and the description of the clothing that Petitioner

23  was wearing when he was apprehended.  (Petition, at 43.)

24      At trial, Mr. Packard, testified that the perpetrator's clothing was "all black."  (RT 108.)

25  Officer Ellis, who encountered Petitioner while he was in the ambulance at the scene, testified that

26  he wore "the remnants of black pants" because paramedics had partially removed his clothing.

27  (RT 139, 144.)  As previously stated herein, the police report, attached to the instant petition,

28  states that Mr. Packard described the victim as being a Black male with a closely shaved head,

    wearing black pants and a black sweatshirt.  (Petition, Exhibit A, at 3.)  Witness Trina Meyer,

21

who testified that she observed part of the incident, believed that the individual she saw had on black and gray Raiders jacket.  (RT 168.)

In trial counsel's declaration, trial counsel states that he investigated the whereabouts of Petitioner's clothing, and discovered that medical personnel had destroyed the clothing when providing medical treatment, and disregarded the remains.  (Petition, Exhibit G, at 3.)

Petitioner's claim is without merit, even if counsel was somehow ineffective, Petitioner fails to demonstrate any resulting prejudice.  As Respondent submits, the victim positively identified Petitioner as the perpetrator, based on their previous acquaintance.  (RT 77, 87.)  Thus, the fact that Petitioner may have been wearing a blue sweat suit when arrest, versus black is insignificant. Moreover, Petitioner's defense at trial was not mistaken identity, but rather that Mr. Packard was the aggressor in the altercation, and that he fabricated the story to justify shooting at Petitioner. (RT 212-214, 222; see also Petition Exh. G, at 2.)

The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Petitioner's claim is without merit and must be denied.

2.   Alibi Witness

Petitioner contends that counsel failed to call alibi witness, Penny Graison, during the trial. (Petition, 45, 47, 51.)  Petitioner contends that this witness would have provided an alibi during the kidnaping.  (Petition, at 46.)

As Respondent submits, Petitioner's claim is nothing more than a conclusory allegation, devoid of any explanation of what this witness would have testified to or how it would have been helpful.  See Villafuerte, 111 F.3d at 630; Berry, 814 F.2d at 1409.

Further, in his declaration, trial counsel states that an alibi defense would have been "ludicrous" given that Petitioner was found at the scene of the incident with a gunshot wound. Moreover, it would have been inconsistent with his defense at trial that Mr. Packard was the actual aggressor.  (Petition, Exh. G, at 2.)

In any event, trial counsel states that he did, in fact, speak with this alibi witness, but found her to be uncooperative.  (Id.)  She told counsel that she dropped Petitioner off several

1 blocks from Mr. Packard's house about thirty minutes before the carjacking.  (Id.)  Counsel noted

2 such evidence may only corroborate the prosecution's case.  (Id.)

3 　　　　Based on the foregoing, Petitioner's claim that counsel was ineffective for failing to

4 present an alibi witness is without merit.

5 　　　　3.　　Orthopedic Surgeons/Medical Staff

6 　　　　Petitioner contends that he gave trial counsel the name of four orthopedic surgeons who

7 could have disputed the prosecution's claim that he was shot three times in the chest and one time

8 in the leg.  (Petition, at 45.)

9 　　　　Trial counsel did present the testimony of Dr. David Nejat-Bina.  (Petition, Exh. 2; see RT

10 173.)  Dr. Nejat-Bina testified that he treated Petitioner in the emergency room for two fractures

11 in his leg, as the result of a gunshot wound.  (RT 176-178.)  Petitioner had further suffered a gun

12 shot to the chest.  (RT 178.)  It was his opinion that Petitioner did not suffer from injuries

13 typically incurred in an automobile accident.  (RT 176-183.)

14 　　　　As with Petitioner's other claims, the instant claim fails on the merits.  Petitioner does not

15 specifically identify the additional witnesses that counsel should have called, nor does he offer any

16 indication as to what the witnesses testimony would have been or how it would have been

17 beneficial to his case.  Moreover, as stated by appellate counsel, where Petitioner got shot or

18 exactly how many times he was shot, was immaterial to the finding of guilt.  Accordingly, the

19 claim is without merit.

20 　　　　4.　　Right to Testify

21 　　　　 Petitioner contends that trial counsel deprived him of his right to testify at trial.  (Petition,

22 at 43, 45, 52.)  Petitioner claims that counsel advised him against testifying in his own defense,

23 because his criminal record could be used against him.  (Petition, at 45.)  Petitioner further

24 contends that although he prepared motions to suppress his prior convictions, counsel prevented

25 him from filing the motions.  (Petition, at 45-46.)

26 　　　　Petitioner's claim fails on the merits for several reasons.  First, Petitioner does not state or

27 point to record that he made the trial court aware of his desire to testify.  Therefore, Petitioner

28 waived such a claim.  United States v. Nohara, 3 F.3d 1239, 1243-1244 (9th Cir. 1993); United

1   States v. Edwards, 897 F.2d 445, 446-447 (9th Cir. 1990).  The trial court has no duty to advise the

2   defendant of his right to testify or to obtain a waiver from the defendant.  Nohara, 3 F.3d at 1244;

3   Edwards, 897 F.2d at 446.

4          Second, counsel's advise was objectively reasonable.  In his declaration, trial counsel

5   declares that he "in no way prevented [Petitioner] from testifying. [Petitioner] knew that had he

6   testified, he would have been impeached with his felony record.  He therefore made his own

7   decision not to testify."  (Petition, Exhibit G, at 2.)  In this case, the prosecution alleged that

8   Petitioner had previously suffered the following three prior convictions: robbery in 1978;

9   receiving stolen property in 1989, and exhibiting a deadly weapon, with the intent to resist arrest,

10   in 1992.  (CT 89-90.)  Petitioner contends that counsel was ineffective in failing to allow him to

11   file a motion to suppress such convictions.  However, Petitioner's claim is meritless because

12   under California law, his prior convictions could and likely would have been used to impeach him

13   if he testified.  See Cal. Evid. Code § 788; Dows v. Wood, 211 F.3d 480, 487 (9th Cir. 2000);

14   Rodriguez v. United States, 286 F.3d 972, 983-985 (7th Cir. 2002); People v. Feaster, 102

15   Cal.App.4th 1084, 1091 (2002).  In California, any prior conviction that involves moral turpitude

16   is admissible to impeach a witness's testimony.  Feaster, 102 Cal.App.4th at 1091.  Robbery and

17   receiving stolen property are crimes of moral turpitude.  People v. Turner, 50 Cal.3d 668, 705

18   (1990).  Exhibiting a deadly weapon, with the intent to resist arrest, would also likely qualify as a

19   crime of moral turpitude.  See People v. Williams, 72 Cal.App.4th 1460, 1464-1465 (1999)

20   (resisting an executive officer by means of force, menace, or threats is a crime of moral turpitude);

21   People v. Lepolo, 55 Cal.App.4th 85, 91 (1997) (branding a weapon is a crime of moral

22   turpitude).  Thus, counsel's advise was objectively reasonable.

23          Third, Petitioner has not, and likely cannot, establish any resulting prejudice because he

24   does not explain what his testimony would have been and how such testimony would have created

25   a reasonable probability of a more favorable result.  Accordingly, Petitioner's claim is without

26   merit, and the state courts' determination of this issue was not contrary to, or an unreasonable

27   application of, clearly established Supreme Court precedent.

28   ///

1    5.    Field Showup

2    As a related claim to Ground One, Petitioner contends that counsel was ineffective for

3    failing to file any motions regarding the alleged unlawful identification procedure. (Petition, at

4    44, 46, 47, 51.) Specifically, Petitioner contends that counsel was ineffective for failing to move

5    to dismiss based on a Miranda violation (Petition, at 44); failing to challenge the showup

6    identification conducted at the hospital as violative of his rights under the Fifth, Sixth, and

7    Fourteenth Amendments (Petition, at 46); failing to move to suppress evidence of the showup

8    identification (Petition, at 47, 51); and failing to move to suppress the in-court identification as

9    "fruit of the poisonous tree" (Petition, at 47, 51.)

10    For the same reasons discussed in Ground One, Petitioner's constitutional claims based on

11    the pretrial and in-court identification are meritless. As previously stated, because a field showup

12    is not testimonial in nature it does not implicate the Fifth Amendment or Miranda. Wade, 388

13    U.S. at 221-222. Further, because the pretrial identification was conducted prior to the initiation

14    of criminal proceedings, the Sixth Amendment right to counsel had not attached. Kirby, 406 U.S.

15    at 690 (plurality opinion). Lastly, no due process violation occurred because there was nothing

16    suggestive about the field showup, and the in-court identification of Petitioner was based on the

17    victim's opportunity to see Petitioner, his acquaintance, during the crime. Therefore, because

18    there was no basis for counsel to file a motion challenging the pretrial or in-court identification of

19    Petitioner, counsel could not have been ineffective. Jackson, 211 F.3d at 1155; James, 24 F.3d at

20    26; Lowry, 21 F.3d at 345.

21    Moreover, Petitioner has not established prejudice. Petitioner's defense at trial was that

22    Mr. Packard was the aggressor and he had fabricated the story to justify shooting Petitioner.

23    Thus, any challenge to the identification would have been inconsistent with such defense.

24    6.    Expert Testimony

25    Petitioner contends that counsel was ineffective for failing to present medical,

26    investigation, and ballistic expert witness testimony. (Petition, at 44, 47.)

27    Petitioner's claim is nothing more than a vague and conclusory allegation, devoid of

28    factual support. Petitioner fails to identify who the witnesses should have been, what they would

25

have testified to, and how that testimony would have created a reasonable probability of a more favorable result.  Accordingly, Petitioner's claim fails on the merits.

### 7.   Failure to Investigate

Petitioner contends that "counsel failed to investigate Petitioner['s] case." (Petition, at 47.)  As with Petitioner's previous claim, it is a conclusory allegation devoid of any explanation or factual support.  "Conclusory allegations which are not supported by a statement of facts do not warrant habeas relief." James, 24 F.3d at 26.  Accordingly, Petitioner's claim fails.

### 8.   Motion For A New Trial

Petitioner makes reference to the fact that counsel "refused to provide any legal assistance with preparing his motion" for a new trial.  (Petition, at 49.)  After trial, Petitioner filed, in propria persona, a motion for a new trial as well as several other post-trial motions.  At the sentencing hearing, the trial court stated "I've read and considered your motion for a new trial.  I'm very familiar with it. . . . I see no basis upon which factually or legally a motion for a new trial should be granted and it is hereby denied." (RT 300.)  The court declined to hear further argument.  (Id.)

Petitioner's claim is without merit.  Whether counsel provided legal assistance for Petitioner's motion for a new trial is immaterial as the trial judged stated there was no basis, either factually or legally, to grant a motion for a new trial.  Additionally, the trial court has discretion whether or not to hear oral argument on a motion for new trial.  People v. Norton, 45 Cal.App.2d 789, 791 (Cal. Ct. App. 1941).  Moreover, the record contains a recitation of a letter by Petitioner arguing that his trial was unfair.  (RT 292-298.)  Lastly, Petitioner does not explain how further oral argument would have made it reasonably probable that a motion for a new trial would have been granted.

Furthermore, the state appellate court, in rejecting Petitioner's claim that the trial court did not allow him to fully present his motion for a new trial, stated:

> Under the circumstances shown by the record on appeal, [Petitioner] was provided an adequate opportunity to present his new trial motion.  General allegations were raised in his written motion; more specific claims were presented in the letter which he partially read into the record, the remainder of which was read and considered by the trial court.  In addition to being cognizant of the claims presented during the hearing on the new trial motion, the trial court had heard two Marsden motions during trial and was aware that a third such motion had been heard prior to

26

trial by a different judge.  The record reveals the trial court was apprised of the general grounds for the motion, although presumably it did not have before it a reporter's transcript of that hearing.

We have examined the transcripts of the Marsden hearings and are satisfied - - as was, implicitly, the trial court- -that all of the bases for the claims of inadequate representation raised in the motion for new trial, motion to vacate judgment, and oral statement/letter, were sufficiently presented during the instant hearing, or that they had been raised and inquired into previously and had been found to lack merit. The court was not compelled to allow [Petitioner] to rehash the same claims. . . . Moreover, the court had heard the trial and was aware that evidence concerning alibi and/or mistaken identification would not only have been irreconcilable with [Petitioner's] defense that Packard was the true assailant, but would also have been inconsistent with the physical evidence- -especially [Petitioner] having been found, shot, a short distance from the accident scene.

(Exhibit D, attached to Answer, at 39-40) (footnote and citations omitted.)

Accordingly, Petitioner has not, and likely cannot, demonstrate any resulting prejudice from counsel's alleged lack of assistance and the trial court's not allowing oral argument on the motion for new trial, and Petitioner's claim fails on the merits.

### 9.    Sentencing

Petitioner contends that counsel was ineffective for only challenging the restitution fine at his sentencing hearing.  The Court notes that counsel did successfully argue that the restitution fine of $10,000 recommended by the probation officer, be reduced to the statutory minimum of $200.  (RT 288-289, 306.)

As counsel declares in his declaration, argument on any other issue at sentencing would have been futile as the trial court was required by statute to impose sentences of life without the possibility of parole for two of Petitioner's offenses, kidnaping to commit robbery, and kidnaping during the commission of carjacking.  Cal. Penal Code §§ 209(b)(1), 209.5(a).  Accordingly, as counsel cannot be faulted for failing to raise a frivolous or meritless argument, Petitioner's claim fails on the merits.  See e.g. Jackson, 211 F.3d at 1155; James, 24 F.3d at 26; Lowry, 21 F.3d at 345.

### 10.    Tremayne Packard

Petitioner contends that counsel was ineffective for failing to call the victim's brother, Tremayne Packard, as a witness, and for failing to cross-examine investigator Ray Cereghino regarding his interview with Tremayne.  (Petition, at 49, 51.)  Petitioner contends that there was

1    the same type of incident alleged involving the victim and his brother, on June 1, 1993. (Petition,

2    at 50.)  Petitioner claims that since he did not parole until June 17, 1993, this would have been

3    exculpatory evidence.  (Id.; see Petition, Exh. P.)

4           Petitioner has submitted the investigation report which reflects that Tremayne Packard

5    stated that he was involved in an incident on June 1, 1993, in which he was shot by two ski-

6    masked individuals who were lying in wait at his grandmother's residence.  (Petition, Exh. B.)

7    When Tremayne arrived at the residence and got out of his vehicle to open the garage door, he

8    was approached by two individuals wearing ski-masks.  (Id.)  One of the individuals held

9    Tremayne at gun-point, while the other searched the vehicle.  (Id.)  Tremayne indicated that it

10   appeared that the gun discharged when the individual slipped/tripped, striking Tremayne in the

11   thigh.  (Id.)  The individuals then took off running.  (Id.)

12          As Respondent submits, assuming that this evidence would have been admissible at trial to

13   presumably demonstrate that someone other than Petitioner was involved in the altercation with

14   Darnell Packard, it fails to demonstrate counsel was ineffective.  As Respondent argues, the

15   problem with this theory is that it is undisputed that Petitioner was found near the crashed vehicle,

16   shot in the leg. (RT 139, 147; Exh. D, at 5.)   As previously stated, the defense at trial was not

17   mistaken identity or alibi, but rather that the victim was the actual aggressor and fabricated the

18   story to justify shooting Petitioner.  (RT 212-214, 22; see also Petition Exh. G, at 2.)

19   Accordingly, presenting the evidence of the prior incident involving Tremayne would have been

20   inconsistent with his defense, and counsel cannot be ineffective for failing to present evidence that

21   was inconsistent with the theory of the case.   Turk v. White, 116 F.3d 1264, 1266-1267 (9th Cir.

22   1997); Jackson v. Shanks, 143 F.3d 1313, 1320 (10th Cir. 1998).

23          11.   Impeachment Evidence

24          Petitioner contends that counsel was ineffective for failing to impeach the victim, Darnell

25   Packard, with his "pending possession to sale drugs - for which he did not get a deal until the case

26   at chief had occurred." (Petition, at 51-52.)

27          The Court takes judicial notice of the fact that attached to Petitioner's second motion for a

28

1  stay, filed July 5, 2006, and addendum to the request filed in this case on September 15, 2006.[10]

2  (Court Docs. 147, 148.)   There, Petitioner submitted court documents relating to the arrest of

3  victim, Darnell Lamont Packard, and prosecution witness, Kevin Wayne Coleman. (Court Doc.

4  147, at 2.)

5          A complaint was filed in the Fresno County Superior Court on or about April 1, 1991, in

6  case number 43901-4 charging both men with a violation of California Penal Code section

7  11351.5, possession of cocaine base for sale. (Court Doc. 148, Exh. C.)  Both men were held to

8  answer the charges on May 7, 1991.  (Id.)  However, the documents submitted by Petitioner

9  demonstrate that the State moved to dismiss the charge against Mr. Packard on December 5, 1991,

10 and he was ordered discharged.  (Court Doc. 147, Exh. A, Appendix E.)  Subsequently, on August

11 9, 1993, Mr. Coleman's case was dismissed.  (Id, Appendix F.)  The minutes further reflect that

12 Mr. Coleman had completed a California Penal Code section 1000 diversion program as

13 ordered.[11]  (Id., Appendix F.)

14         Petitioner has not, and likely cannot, demonstrate that counsel was ineffective for failing

15 to discover or present this evidence, as there is not a reasonable probability that, but for counsel's

16 unprofessional errors, the result would have been different.  Petitioner has submitted evidence that

17 both Mr. Coleman and Mr. Packard were charged with possession of cocaine base for sale in

18 1991.  However, the evidence submitted by Petitioner does not demonstrate that Mr. Packard

19 engaged in any misconduct, as the charge against him was dismissed eight months after the

20 complaint was filed, on December, 5, 1991, on the prosecution's motion.  (Court Doc. 147, Exh.

21 B, Appendix E.)

22         Although the charges against Mr. Coleman were not dismissed, Petitioner's documents

23 demonstrate the he successfully completed a diversion program pursuant to Penal Code section

24

25         [10] A Court may take judicial notice of court records.  See, MGIC Indem. Co. v. Weisman, 803 F.2d 500,

26 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th cir. 1980).

27         [11] As Respondent correctly states, at that time, the diversion statute provided that a defendant did not plead
   guilty, but was ordered to participate in a drug education, treatment, or rehabilitation program for six months to two
28 years.  People v. Ormiston, 105 Cal.App.4th 676, 687 n.7 (2003).  Upon satisfactory completion of the program, the
   charge would be dismissed and the arrest would be deemed not to have occurred.  Id.

1000 et seq. (Id., Appendix F.)  Pursuant to California law, at that time, the arrest was deemed

not to have occurred.  Ormiston, 105 Cal.App.4th at 687 n.7, 690 n.10.  Accordingly, as

Respondent submits, this evidence would not have had great impeachment value.  Moreover, Mr.

Coleman's trial testimony was brief and somewhat cumulative of Mr. Packard's testimony (See

RT 150-155.)  Mr. Coleman testified that he had encountered Mr. Packard, a relative, shortly after

Packard had escaped from the carjacked vehicle.  (RT 151.)  Mr. Coleman testified that Mr.

Packard appeared to be in shock.  (RT 153.)  Mr. Packard told him that he had been carjacked and

he was able to take the gun away from the perpetrator.  (RT 153.)  Thus, even if Mr. Coleman's

entire testimony had been discounted, it was immaterial to the verdict and would have made no

difference.

    To the extent Petitioner contends that the arrests resulted in bias in favor of the

prosecution, his claim is without merit.  As Respondent points out, in his state bar complaint,

Petitioner suggests that Mr. Packard and Mr. Coleman were "placed into a drug diversion program

pursuant to a hidden plea bargain. . . ."  (Court Doc. 147, Exh. B at 2.)  However, both Mr.

Packard's and Mr. Coleman's cases were resolved with dismissal of the charges prior to Petitioner

committing his criminal offense on October 19, 1993.

    Based on the foregoing, Petitioner's claim is without merit.

G.    Ground Seven: Ineffective Assistance of Appellate Counsel

    Petitioner contends that he was deprived of effective assistance of counsel on direct

appeal.  (Petition, at 53.)  Specifically, Petitioner contends that appellate counsel raised frivolous

issues on appeal, did not raise the issues requested by Petitioner, did not consolidate his petition

for writ of habeas corpus with his direct appeal, violated the attorney-client privilege by

discussing his case with a friend at the Superior Court of Sacramento County, and withdrew after

the direct appeal was decided without filing a petition for review or an Anders[12] brief.  (Petition,

---

[12] In Anders v. California, 386 U.S. 738 (1967), the Supreme Court held that appointed counsel who finds
no nonfrivolous issues to raise on direct appeal must so advise the appellate court and request permission to
withdraw.  Id. at 744.  The request must be accompanied by a brief referring to anything in the record that might
arguably support the appeal.  Id.  The appellate court then decides whether the appeal is frivolous or whether the
defendant requires the assistance of counsel to argue the appeal.  Id.; see also People v. Wende, 25 Cal.3d 436
(1979).

1   at 52-58.)

2       Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the

3   Fourteenth Amendment.  Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective

4   assistance of appellate counsel are reviewed according to Strickland 's two-pronged test.  Miller v.

5   Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th

6   Cir.1986); See, also, Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346, 353-54 (1988) (holding that

7   where a defendant has been actually or constructively denied the assistance of appellate counsel

8   altogether, the Strickland standard does not apply and prejudice is presumed; the implication is

9   that Strickland does apply where counsel is present but ineffective).

10      To prevail, Petitioner must show two things.  First, he must establish that appellate

11  counsel's deficient performance fell below an objective standard of reasonableness under

12  prevailing professional norms.  Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052,

13  2064 (1984).  Second, Petitioner must establish that he suffered prejudice in that there was a

14  reasonable probability that, but for counsel's unprofessional errors, she would have prevailed on

15  appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence

16  in the outcome. Id.

17      Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue

18  requested by a defendant. Jones v. Barnes, 463 U.S. 745, 751-54 (1983); Miller, 882 F.2d at 1434

19  n.10.  In Jones, the Supreme Court noted, "[e]xperienced advocates since time beyond memory

20  have emphasized the importance of winnowing out weaker arguments on appeal and focusing on

21  one central issue if possible, or at most on a few key issues." Jones, 463 U.S. at 751-752; see also

22  Miller, 882 F.2d at 1434.

23      1.    Background

24      As Respondent submits, the evidence submitted by Petitioner demonstrates that he had

25  considerable correspondence with his appellate counsel. (Petition, Exhs. J, O, X, Y, Z.) Prior to

26  filing the brief with the appellate court, counsel informed Petitioner that he was free to inform him

27  what issues he would like to raise on appeal. (Id., Exh. Y.) Subsequent to receiving the letter

28  from Petitioner, counsel wrote a detailed and thorough letter setting forth the issues he thought

1    were most viable on appeal.  Counsel further explained why he thought the issues suggested by

2    Petitioner would not be successful.  (Id., Exh. Z.)  Appellate counsel also noted, consistent with

3    the above law, that the appeal should be limited in number, so that it would be considered

4    seriously.  (Id.)

5           Appellate counsel filed an opening brief to the Fifth District Court of Appeal raising six of

6    the ten issues he had identified.  (Respondent's Exhibit A.)  Specifically, the issues raised were:

7    (1) sufficiency of the evidence to support the convictions for four of the five counts; (2) lack of a

8    unanimous verdict for Count V; (3) trial court error in refusing to exclude the victim's

9    professional aspirations; (4) trial court error for denying a motion for mistrial after a witness

10   identified a time period as being when Petitioner was "first released;" (5) trial court error in

11   instructing the jury with CALJIC NO. 2.21.2; and (6) trial court error in refusing to allow

12   Petitioner to argue his motion for a new trial.  (Respondent's Exhibit A.)

13          2.     Frivolous Issues

14          Petitioner's contention that appellate counsel raised frivolous issues on appeal, is simply

15   without merit.  (Petition, at 54-55.)  As Respondent submits, the appellate court did not treat the

16   issues raised in the appeal as frivolous, as each claim was addressed in a reasoned opinion on the

17   merits.  (See Exhibit D, attached to Answer.)  The fact that they were ultimately denied does not

18   equate to the claims being frivolous.

19          3.     Issues Presented To Counsel By Petitioner

20          Petitioner contends that counsel was ineffective for failing to raise the issues he had

21   presented to counsel.  (Petition, at 54, 57-58.)  However, as stated above, counsel made a tactical

22   decision as to what issues were the most successful to present to the appellate court.  It is not up to

23   Petitioner to chose which claims counsel should pursue.  Smith v. Robbins, 528 U.S. 259, 288

24   (2000) (appellate counsel must be permitted to select issues for appeal "in order to maximize the

25   likelihood of success on appeal.")

26          The exhibits submitted by Petitioner demonstrate that counsel made a reasoned strategic

27   and tactical decision in deciding which issues should and should not be presented to the appellate

28   court for review.  Based on appellate counsel's response letter to Petitioner, explaining in detail

why the claims suggested by Petitioner would not be as successful as those identified as counsel,

it is reasonable to conclude that counsel made a well-reasoned strategic decision.  (Petition, Exh.

Z.)

Moreover, in reviewing the sixteen claims Petitioner raised to appellate counsel, further

demonstrates that counsel exercised reasonable professional judgment in deciding which claims to

pursue.[13]  More specifically, with regard to the claim of insufficiency of the evidence and failure

of the trial judge to allow oral argument on Petitioner's motion for a new trial, these claims were

in fact raised on appeal by appellate counsel.  (Respondent's Exhibit A, at 8, 29.)  With regard to

the five claims of ineffective assistance of counsel, as Respondent points out, direct appeal is not

the most appropriate vehicle to raise those claims.  Bonin v. Vasquez, 999 F.2d 425, 431 (9th Cir.

1993); People v. Pope, 23 Cal.3d 412, 426 (1979), overruled on other grounds, People v.

Berryman, 6 Cal.4th 1048 (1993).  Petitioner's unconstitutional pretrial, in-court identification,

Miranda violation, mistaken identification, and claim regarding his missing clothing were all

raised in this federal petition, and as explained herein, are without merit.  Therefore, counsel

could not have been ineffective for failing to raise meritless claims.  See e.g. Jackson, 211 F.3d at

1155; James, 24 F.3d at 26; Lowry, 21 F.3d at 345.

With regard to the remaining claims of bias of the trial judge at sentencing, violation of

due process by not allowing Petitioner to be present at the hearing on the Public Defendner's

conflict motion, prosecutorial misconduct, and the exclusion of African American and Hispanics

from the jury, Petitioner fails to explain how these claims were stronger than those raised by

appointed appellate counsel on appeal, and therefore has failed to demonstrate deficient

performance.  See Smith, 528 U.S. at 288.

---

[13]  Briefly, the sixteen claims raised by Petitioner were:
1) ineffective assistance of counsel during preliminary hearing; 2) ineffective assistance of counsel during jury trial; 3) bias of trial judge at sentencing; 4) the petitioner's sentencing (sic); 5) insufficient evidence to support conviction; 6) failure of counsel to call alibi witness; 7) failure of counsel to impeach victim with pending drug case; 8) failure of trial counsel to submit Petitioner's motions on December 22, 1993; 9) denial of due process by failing to allow Petitioner to be present at counsel conflict hearing on October 28, 1993; 10) trial court error in failing to allow oral argument on motion to dismiss; 11) tainted pretrial and in-court identification; 12) Miranda violation; 13) mistaken identification violations; 14) destroyed evidence of Petitioner's clothing; 15) prejudicial prosecution misconduct; and 16) exclusion of only African-American and three Hispanic jurors from jury panel.

1    However, as Respondent argues, the record does not support Petitioner's contention that

2    these claims were meritorious.  First, with regard to Petitioner's claim that the judge was biased at

3    sentencing, the Court presumes, as does Respondent, that Petitioner is referencing the following

4    passage during sentencing:

5         You are one of the most vicious, violent people I have ever had the
          displeasure of having in my courtroom . . . You, sir, if I had in my ability to
6         statutorily would go away forever, never to see the light of day again.  Decent
          people deserve to be free from you.  They do not deserve to have you on the streets.
7         And if I have anything to say about it, and I think I do, you are going to be away in
          prison for a long, long, time, as long as I can put you there.  You know you did it.  I
8         know you did it.

9    (RT 302-303.)

10    In a habeas corpus petition, this Court must determine whether the state trial judge's

11    behavior rendered the proceeding so fundamentally unfair as to violate federal due process under

12    the United States Constitution.  See Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995).   As

13    Respondent submits, the remarks by the trial judge were made during sentencing, after the judge

14    had sat through the trial and heard all the evidence in the case.  The remarks were based on that

15    evidence, and were therefore not improper.  As the Supreme Court has stated:

16         The judge who presides at a trial may, upon completion of the evidence, be
          exceedingly ill disposed towards the defendant, who has been shown to be a
17         throughly reprehensible person.  But the judge is not thereby recusable for bias or
          prejudice, since his knowledge and the opinion it produced were properly and
18         necessarily acquired in the course of the proceedings, and are indeed sometimes (as
          in a bench trial) necessary to completion of the judge's task.

19
20    Liteky v. United States, 510 U.S. 540, 550-551 (1994).  Moreover, as trial counsel declared in his

21    declaration, the trial judge did not have discretion to impose a lesser term on Petitioner.  (Petition,

22    Exh. G.)  Accordingly, Petitioner's claim fails on the merits.

23    With regard to Petitioner's claim that denied due process by his absence at the hearing on

24    the Public Defender's conflict motion, it too is without merit.  Although Petitioner had a right to

25    be present at this proceedings, as it was a critical stage of the criminal proceedings, Petitioner has

26    not, and likely cannot, demonstrate that his presence was critical because the Public Defender's

27    office did not represent him at trial.  Rather, at his arraignment, the law firm of John Barker and

28    Associates was appointed to represent him.  (CT 73.)   Therefore, his right to conflict-free counsel

was protected and exercised and Petitioner does not explain, and the Court cannot determine, how his presence would have effected the result of the proceedings.  Accordingly, Petitioner's claim is meritless.

With regard to Petitioner's challenge to the exclusion of certain jury members, as appellate counsel declared, the mere fact that Petitioner was tried by an all-white jury, in and of itself, does not violate the Constitution.  Petitioner offers no justification or factual reference to overcome counsel's reasonable professional judgment that this claim was not viable on appeal.  Further, with regard to Petitioner's claim that the prosecutor engaged in misconduct, Petitioner's claim is nothing more than a vague and conclusory allegation, and fails on the merits.  See Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir.1995) (holding that conclusory allegations made with no reference to the record or any document do not merit habeas relief).

### 4. Attorney-Client Privilege

Petitioner contends that appellate counsel violated the attorney-client privilege by discussing his case with a friend at the Superior Court of Sacramento County.  (Petition, at 56.)  In support of his claim, Petitioner cites Exhibit K, attached to his petition.  However, a review of Exhibit K, attached to the petition, appellate counsel states, "[a]ccording to a friend of mine who works at Sacramento County Superior Court, O'Neill definitely should accept your writ for filing."  (Petition, Exh. K.)  Thus, it is evident from such statement that appellate counsel merely communicated the proper procedure for filing a writ petition in the Superior Court, as such Petitioner has not demonstrated that the attorney-client privilege was in any way jeopardized.

### 5. Counsel's Withdrawal

Lastly, Petitioner contends that appellate counsel withdrew without filing a petition for review or Anders brief to the California Supreme Court.  Appellate counsel informed Petitioner that he had the option and provided instructions for filing a petition for review with the California Supreme Court.  (Petition, Exh. O.)  Appellate counsel did not anticipate being appointed for further discretionary review.  (Petition, Exh. K.)

Because the right to counsel extends only to the first appeal of right, counsel was not and could not have been ineffective for failing to file a petition for review or Anders brief to the

35

California Supreme Court, as review by that court is discretionary, to which no right of counsel attaches. <u>Ross v. Moffit</u>, 417 U.S. 600, 610, 619 (1974); <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555 (1987).  Accordingly, Petitioner was not deprived of the right to effective assistance of counsel. <u>Wainwright v. Torna</u>, 455 U.S. 586, 587 (1982).

H.      <u>Ground Eight: Denial Of Due Process In Failing To Allow Petitioner Opportunity To File Reply To Trial Counsel's Declaration</u>

Petitioner contends that his right to due process was violated because the Court of Appeal did not provide him the opportunity to file a reply to the declaration of trial counsel before summarily denying the state petition for writ of habeas corpus.  (Petition, at 59.)

As previously stated herein, Petitioner filed a petition for writ of habeas corpus in the Fifth District Court of Appeal, on January 5, 1996.  (Exhibit I, attached to Answer.)   Petitioner raised the claims, as raised herein, that he received ineffective assistance at his preliminary hearing and trial.  (<u>Id</u>.)  In response to Petitioner's claim, the Court of Appeal directed preliminary hearing counsel, Gail Bristo, and trial counsel, David S. Rugendorf, to file declarations regarding Petitioner's allegations.  (Petition, Exhs. G, H.)  Both counsel filed declarations, which are attached to Petitioner's instant petition.  (<u>See</u> Petition, Exhs. G, H.)  The Court then granted Petitioner the opportunity to file a reply to Ms. Bristo's declaration.  (Petition, Exh. I.)  On September 27, 1996, the Court of Appeal denied the petition.  (Exhibit J, attached to Answer.)

As Respondent sets forth, the California Rules of Court permit the state court of appeal to "request an informal response from the respondent or real party in interest" when a petition for writ of habeas corpus is filed in that court.  Cal. Rules of Court, rule 60.  "The informal response contemplated by Rule 60 performs a screening function."  <u>People v. Romero</u>, 8 Cal.4th 728, 742 (1994) (en banc).  If the responding party demonstrates through the informal response that the claim lacks merit, the court may summarily deny the petition without formal pleadings or an evidentiary hearing.  <u>Id</u>. at 742.

Pursuant to Rule 60, if an informal response is filed, the court shall notify the petition that he may file a reply to the informal response within 15 days or a time specified by the court.  Cal. Rules of Court, rule 60.  The California Supreme Court has acknowledged that the lack of an

1  opportunity to file a reply to the factual assertions raised in the informal response may violate due

2  process.  Romero, 8 Cal.4th at 741.

3       Respondent points out that although a declaration by defense counsel is not, strictly

4  speaking, a response from the "respondent or real party in interest," at least one California court

5  has analyzed a request for a declaration from counsel regarding an ineffective assistance of

6  counsel claim, as an informal response pursuant to Rule 60.  Durdines v. Superior Court, 76

7  Cal.App.4th 247, 250-254 (1999).

8       As phrased by Respondent, this claim does not support a claim that Petitioner was

9  deprived of his constitutional rights at trial.  Rather, his claim is more appropriately that this Court

10  should not defer to the state court's factual findings, because Petitioner was not provided the

11  opportunity to file a reply to trial counsel's declaration.

12       The effectiveness of trial counsel is a mixed question of law and fact.  Summerlin v.

13  Stewart, 341 F.3d 1082, 1092 (9th Cir. 2003), reversed on other grounds Schriro v. Summerlin,

14  542 U.S. 348 (2004); Bonin v. Calderon, 59 F.3d 815, 825 (9th Cir. 1995).  Trial counsel's

15  declaration, provided to the state court, and this court, provide facts regarding his reasons for his

16  actions or omissions.  (Petition, Exh. H.)

17       Under AEDPA, Petitioner must rebut the presumption of the state court's factual findings

18  by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115

19  S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day,

20  110 F.3d 1380, 1388 (9th Cir. 1997).

21       As Respondent correctly argues, Petitioner does not, even now, explain how counsel was

22  ineffective or how he would have responded to the declaration.  In any event, as stated in section

23  F, Petitioner's claims of ineffective assistance can be resolved by reference to the pleadings and

24  record, without resolving any factual disputes.  As such, Petitioner's claim is without merit.

25  I.    Ground Eleven: State Court's Ruling That Petitioner's Rights Under Miranda v. Arizona
       Were Not Violated Was Not Objectively Unreasonable

26

27       Again, Petitioner contends that the pretrial identification procedure violated his Miranda

28

1   rights.[14] Petitioner contends that after being advised of his Miranda rights, he exercised his right

2   to have an attorney present and refused questioning. (Court Doc. 15, at 74.)  Petitioner contends

3   that it was a Miranda violation for the officer to subsequently arrange for an identification of

4   Petitioner.  (Id. at 74-75.)   Petitioner contends that although this appeared to be the same issue as

5   Ground One, it "is in fact a total different issue . . ." (Id. at 2.)

6         Although Petitioner appears to be challenging the state court's ruling, his claim is legally

7   identical to the claim raised in Ground One.  As stated, Petitioner's Fifth Amendment and

8   Miranda rights were not violated by the subsequent pre-trial identification.  Accordingly, his claim

9   is without merit.

10   J.     Ground Fifteen: Trial Court Did Not Provide Adequate Hearing On Motion For New Trial

11         Petitioner contends that the trial court failed to comply with California law in considering

12   his motion for a new trial. (Petition, at 90, 94.) Specifically, he contends that he was not

13   provided the opportunity to give oral argument in support of his motion.  (Petition, at 97.)

14         First, Petitioner's claim is not cognizable via § 2254, as it alleges a state law violation

15   only.  Habeas corpus relief is not available to correct alleged errors in the state court's application

16   or interpretation of state law.  Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480 (1991);

17   Middleton v. Cupp, 768 F.2d 1083, 1084-85 (9th Cir.1985).

18         Second, for the reasons explained above in section F, subsection 8, Petitioner's claim is

19   meritless.  On March 15, 1994, Petitioner filed a pro se motion for a new trial and attached a

20   Memorandum of Points and Authorities.  (CT 174-182.)

21         At his sentencing hearing, Petitioner was allowed to read a letter into the record in which

22   he raised several claims of ineffective assistance of counsel and violations of his constitutional

23   rights. (RT 292-298.)  The Court subsequently read the remaining portion of the letter into the

24   record in an attempt to conserve time.  (RT 298.)

25         Petitioner then referenced his motion for a new trial (RT 299), and asked whether the court

26   wished to hear oral argument.  (RT 300.)  The court denied the motion finding that oral argument

27

28       [14] On August 10, 1999, the Court granted Petitioner's request to withdraw Ground Eleven and to substitute this claim as Ground Eleven.  (Court Doc. 17.)

1  was unnecessary.  (Id. at 300-301)

2         This claim was raised on direct appeal.  (Exhibit A, attached to Answer, at 29-38.)  As

3  explained under section F, subsection 8, whether to hear oral argument on a motion for a new trial

4  is committed to the trial court's discretion.  (Exhibit D, attached to Answer, at 39.)  The court

5  found that the trial court had sufficiently heard Petitioner's arguments and it "was not compelled

6  to allow [Petitioner] to rehash the same claims."  In any event, Petitioner does not explain how

7  further argument would have altered the written motion and letter heard by the trial court.  The

8  determination of this issue was not contrary to, or an unreasonable application of, clearly

9  established Supreme Court precedent.  Thus, Petitioner's claim is without merit.

10                                         RECOMMENDATION

11         Based on the foregoing, it is HEREBY RECOMMENDED that:

12         1.      The petition for writ of habeas corpus be DENIED; and

13         2.      The Clerk of Court be directed to enter judgment in favor of Respondent.

14         This Findings and Recommendations is submitted to the assigned United States District

15  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the

16  Local Rules of Practice for the United States District Court, Eastern District of California.  Within

17  twenty (20) days after being served with a copy, any party may file written objections with the

18  court and serve a copy on all parties.  Such a document should be captioned "Objections to

19  Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served

20  and filed within ten (10) court days (plus three days if served by mail) after service of the

21  objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636

22  (b)(1)(C).  The parties are advised that failure to file objections within the specified time may

23  waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

24  1991).

25         IT IS SO ORDERED.

26   **Dated:    November 20, 2006**              _____/s/ **Dennis L. Beck**_____
     3b142a                                       UNITED STATES MAGISTRATE JUDGE
27

28

                                                 39